**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| JO-ANNE ST. MARTIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **14-40159-TSH** |
| | ) | |
| AZZ/CGIT INCORPORATED, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER**
**July 30, 2015**

**HILLMAN, D.J.**

**Background**

Jo-Anne St. Martin ("St. Martin" or "Plaintiff"), proceeding *pro se*, has filed a Complaint against AZZ/CGIT Incorporated ("AZZ" or "Defendant") alleging claims for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. This Memorandum and Order of Decision addresses the Motion of Defendant AZZ/CGIT, Inc. to Dismiss Plaintiff's Complaint (Docket no. 7). For the reasons set forth below, that motion is granted.

**Discussion**

*Standard of Review*

AZZ has filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) seeking dismissal of St. Martin's claims for violation of the ADA on the grounds that: (1) she failed to exhaust her administrative remedies in a timely manner, and/or (2) her allegations fail to state a claim upon which relief may be granted. On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

*Facts*

*Plaintiff Files Her Claim with the EEOC*

St. Martin was employed by AZZ as a "detail drafter." *See Complaint* (Docket No. 1), *Ex. 1*, at p. 1. In early 2013, St. Martin was involved in a motor vehicle accident and sustained a serious concussion. *Id.*, *Ex. 1*, at p. 3. As a result, on February 14, 2013, pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§2601 *et seq.* AZZ granted St. Martin a leave of absence. *See Id.*, at *Ex. 4*. Under the FMLA, St. Martin was entitled to twelve weeks of leave. *Id.* St. Martin exhausted her FMLA leave on May 8, 2013. *Id.* Thereafter, in accordance with AZZ's policy, she was offered and approved for an additional three months of unpaid leave beginning on May 9, 2013. *Id.*

On August 9, 2013, AZZ sent St. Martin a letter by certified mail advising her that she had exhausted all of her leave time. *See Id.*, at *Ex. 8*. AZZ also asked that St. Martin have her health care provider complete a "Healthcare Provider Inquiry" in order that AZZ "may understand the limitations your impairment poses, if any" upon her return to work. *Id.* St. Martin's physician, Patrick McSweeney, M.D., returned the completed form to AZZ on or about August 23, 2013. *See Id.*, at *Ex. 9*. Thereafter, AZZ made the decision to terminate St. Martin's employment. On August 26, 2013, AZZ sent St. Martin a letter by certified mail advising her that her employment had been terminated effective that day because of her inability to return to work. St. Martin received the letter on September 18, 2013. *See Id.*, at *Ex. 13*.

On July 16, 2014, St. Martin completed and filed an Intake Questionnaire with the Equal Opportunity Commission ("EEOC") alleging discrimination based on a disability. *See Id.*, ¶ 4 and *Ex. 1*. On July 29, 2014, the EEOC provided St. Martin with a letter stating that based on the information she provided her claim was subject to the ADA. *Id.*, ¶ 5 and *Ex. 2,* at p. 1. The

EEOC requested that St. Martin complete and return EEOC Form 5, Charge of Discrimination. *Id.* St. Martin returned the completed Form 5 to the EEOC on or about August 10, 2014. *Id., Ex 2,* at pp. 2-4. On August 15, 2014 the EEOC sent a Dismissal and Notice of Rights to St. Martin advising her that it was closing her case because she had not filed her complaint in a timely manner. *See Id.*, ¶ 6 and *Ex. 3,* at p. 1. The letter also contained the standard Notice of Suit Rights which advised St. Martin that she had the right to file a lawsuit within 90 days of the date of receipt of the letter. *Id.*

*AZZ's Alleged Discriminatory Acts*

St. Martin claims that AZZ failed to engage in an "interactive process" regarding reasonable accommodation to which she was entitled for her "known disability," despite the fact that such an accommodation was known and apparent. AZZ's failure to engage in the "interactive process" began on May 8, 2013, upon the expiration of the leave to which St. Martin was entitled under the FMLA, when it sent her a letter outlining her rights to additional leave in accordance with company policy. AZZ also failed to engage in the interactive process occurred in August 2013, when St. Martin was told by an AZZ human resources representative, Ms. Jefferson, that she would most likely be terminated. St. Martin was asked to provide AZZ with reports from her recent doctor's visits. St. Martin told Ms. Jefferson that her doctor said she could come back on a limited hours schedule. Ms. Jefferson told Ms. St. Martin AZZ would not allow that and asked her if she really wanted to come back; St. Martin replied that she did not want to lose her job.

On August 9, 2013, AZZ sent St. Martin a letter with a form, *i.e.,* the Healthcare Provider Inquiry, to be filled out by her physician and returned within 15 days. After receiving the letter, St. Martin called AZZ's human resources department and asked what the form was—she was

told it might assist in holding her job. On August 23, 2013, St. Martin's physician, Dr. McSweeney, faxed the completed medical questionnaire form back to AZZ. To the following questions posed, he responded as follows:

> Does the employee have a physical or mental impairment?
>
> *Post-concussive Syndrome*
>
> How long is the impairment likely to last?
>
> *6-12 months*
>
> What limitation(s) interfere with job performance?
>
> *Unable to sustain any cognitive or physical activity. Has worsening of headache, nausea, fatigue with mental effort.*
>
> What essential job function(s) will the employee have trouble performing because of the limitations?
>
> *All functions that require thinking/concentrating.*
>
> How does the employee's limitation(s) interfere with his/her ability to perform the job functions?
>
> *Self-explanatory. If you cannot think correctly or sustain attention you cannot perform any job.*

Dr. McSweeney also stated that: as a result of her condition, she was substantially limited in one or more of the major life activities of caring for herself, interacting with others, performing manual tasks, working, walking, thinking, speaking, learning, lifting, and concentrating. *Id.*, *Ex. 9,* at pp. 1-2 (emphasis added). As to possible accommodations which would enable St. Martin to successfully perform the essential functions of her job, Dr. McSweeney recommended that the hours she worked per day be *significantly* limited until she recovered and proved she could perform. He also stated that St. Martin's working limiting hours would allow improvement, *or* cause a set-back. *Id.*

5

Despite the " possible accommodations" suggested by St. Martin's physicians, AZZ failed to engage St. Martin in an interactive process. Shortly after receiving the completed form 5, AZZ's corporate headquarters sent Ms. Jefferson an e-mail asking if St. Martin would be terminated. *Id.,* at ¶ 15. On or about August 26, 2013, Ms. Jefferson called St. Martin to see if she had received her termination letter from AZZ. St. Martin replied no. She asked Ms. Jefferson about the completed form 5 which St. Martin understood could assist in holding her job, but got no straight answers. *Id.*, at ¶16. After August 26, 2013, St. Martin had multiple conversations with Ms. Jefferson and other members of the AZZ human resource department—she did not receive direct answers to her questions and no one provided her an explanation of the form 5 which her physician had filled out. *Id.*, at ¶¶ 18-20.

On September 18, 2013, St. Martin received a termination letter from AZZ via certified mail. The letter stated that her termination date was August 26, 2013, and that the reason for her termination was that she was unable to return to work and that her physician has indicated that she would not be able to return to work for 6-9 months. *Id.*, at ¶ 20.

### *Whether St. Martin's Complaint Should Be Dismissed*

While I agree with AZZ that the Complaint is not a model of clarity, St. Martin is proceeding *pro se* and, therefore, the Court will construe her pleading and related submissions liberally. Nonetheless, while "[t]he Court may relax the pleading standards somewhat for *pro se* litigants … the Court is not the plaintiff's advocate and will not 'conjure up implied allegations,' in order … to state an actionable claim." *Brown v. Dep't of Veterans Affairs*, 451 F. Supp. 2d 273, 276-77 (D. Mass. 2006)(internal citations and citation to quoted case omitted). I find that St. Martin has alleged two claims: (1) her termination violated the ADA; and (2) AZZ violated the ADA by failing to engage in the interactive process.

*Whether St. Martin's Claims Must Be Dismissed For Failure To Exhaust Administrative Remedies*

Before addressing whether St. Martin's complaint states a *prima facie* case of ADA discrimination, the Court will first address AZZ's assertion that the claim must be dismissed as untimely. "[I]t is well-settled that an employee alleging discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought … When filed with a state agency, the administrative claim must be filed within 300 days after the alleged unlawful employment practice occurred." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009)(citing 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061 (2002)). When filing directly with the EEOC, a plaintiff must file her claim within 180 days of the date of the alleged discriminatory act. *See* 42 U.S.C. § 20003-5(e)(1). However, because Massachusetts is a "deferral jurisdiction," St. Martin had 300 days to file her administrative complaint with the EEOC. *See Fletcher v. Tufts Univ.*, 367 F.Supp.2d 99 (1st Cir. 2005). Failure to timely file an administrative charge, unless excused (essentially, missing the filing deadline due to circumstances beyond the claimant's control), bars a plaintiff from obtaining judicial relief in this Court. *See Bonilla v. Muebles JJ. Alvarez, Inc.*, 194 F.3d 275, 278-79 (1st Cir. 1999).

In this case, St. Martin was terminated by AZZ on August 26, 2013 and, taking the facts in a light most favorable to her, she received notice of her termination on September 18, 2013. Therefore, St. Martin had until July 15, 2014 to file her discrimination claim with the EEOC; she filed her claim on July 16, 2014, the 301st day following the alleged wrongful conduct by AZZ. Accordingly, St. Martin's claims are barred unless she can establish that equitable tolling should apply, that is, that her failure to meet the filing deadline was due to circumstances beyond her control. St. Martin argues that her failure to meet the filing deadline should be excused because

7

*her condition* prevented her from filing her administrative complaint in a timely manner.  More specifically, she argues that she was still suffering from severe post-concussion syndrome which impaired her cognitive activity to the extent that she was too incapacitated to meet the filing deadline.[1]  Ironically, she cites substantially the same medical evidence to support her contention that she was too incapacitated to timely file her administrative complaint that AZZ cites in support of its argument that after her leave had expired, she was unable to perform the essential elements of her job, with or without reasonable accommodation.

St. Martin, by her own arguments, has painted herself into a corner—that is, she wants the Court to find that her injuries left her so incapacitated that she could not file her administrative complaint within the *300* day filing deadline, but at the same time, wants the Court to find that with reasonable accommodations she could have performed the essential functions of her job (and, therefore, AZZ violated the ADA by terminating her).  The Court will accept St. Martin's argument that as a result of her post-concussion syndrome that she suffered from the accident, she was unable to file her administrative complaint in a timely manner.[2]  Accordingly, AZZ's motion to dismiss the complaint for failure to exhaust her administrative remedies is denied.  However, this reprieve is temporary as, for the reasons set forth below, I find that she has failed to state a claim against AZZ under the ADA.

---

[1] St. Martin's suggestion that she failed to file her administrative complaint due to AZZ's bad faith is simply a non-starter. The conduct she relies on, *i.e.,* AZZ's HR employees' failure to answer her direct questions regarding her employment and continued evasiveness all happened *before* September 18, 2013, *i.e.,* the date she received the termination letter.  The termination letter was clear and from that date forward, regardless of what she understood (or did not understand) before, St. Martin was on notice that she had been terminated.  For that reason, she cannot reasonably point to any actions by AZZ in support of her equitable tolling argument.

[2] In her complaint filed with the EEOC, St. Martin stated: "[a]t the time of my termination, due to my disability, my husband was handling most of my affairs *as I was not able to … .*" *Complaint*, *Ex. 2,* at  p. 2.  (emphasis added). Additionally, in a letter to the EEOC dated July 16, 2014, St. Martin states "[w]hen the discrimination took place it was not obvious to me.  At the time I was disabled due to a Brain Injury Post Concussion Syndrome. *My cognitive state was not very clear." Complaint*, at *Ex. 3* (emphasis added).

*Whether St. Martin's Claims Must Be Dismissed For Failure To State A Claim*

An employer cannot discriminate against a qualified individual who suffers from a disability within the meaning of the ADA. 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A). *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002). In order to state a *prima facie* claim for violation of the ADA, the claimant must establish: (1) she suffered from a "disability" within the meaning of the Act[3]; (2) she was qualified to perform the essential functions of her job, either with or without reasonable accommodation; and (3) she was terminated, in whole or part, because of her disability. *Id.*, at 238. To the extent that she is claiming that AZA failed to reasonably accommodate her disability, she needs to show that despite knowing of her alleged disability, AZZ did not reasonably accommodate it. *Id.* Furthermore, the ADA's regulations state that "it may be necessary for the covered entity [the employer] to initiate an informal, interactive process with the qualified individual [the employee] with a disability in need of the accommodation." 29 C.F.R. § 1630.2(*o*)(3) (2005). Accordingly, when an "employer becomes aware of the disability of an employee, the employer is expected to engage in a meaningful dialogue with the employee to find the best means of accommodating that disability." *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005).

---

[3] St. Martin suffered a severe concussion, the affects which were expected to last from 6-12 months. Although the issue is certainly not free from doubt, for purposes of this Order, I will assume that St. Martin suffered from a "disability" within the meaning of the ADA. *See Katz v. City Metal Co., Inc.,* 87 F.3d 26, 31 (1st Cir. 1996)(although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to level of disability. Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, *if severe,* may constitute disabilities).

Essentially, St. Martin alleges that AZZ failed to act in good faith by failing to engage in the interactive process and/or by obstructing or delaying that process. An employer's obligation *vis a vis* the required interactive process is unclear—while the employer must communicate with the individual, the employer need not "raise[ ] and discuss[ ] every conceivable accommodation with the disabled employee ... the 'interactive process' is to be 'informal' and a means of *'potential* reasonable accommodations' that could overcome the employee's disability". *Id.,* at 108–09. "[L]iability for failing to adequately engage in the interactive process '... depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions.' " *Horn v. Southern Union Gas Co.,* C.A. 07–142S, 2009 WL 462697 (D.R.I. Feb.20, 2009) (quoting *Kvorjak v. Maine,* 259 F.3d 48, 52 (1st Cir.2001)). Furthermore, the First Circuit has made clear that an employer's failure to engage in the interactive process is "'of no moment' if the record forecloses a finding that the plaintiff could perform the duties of the job, with or without reasonable accommodation." *Kvorijak*, 259 F.3d at 53.

Whether AZZ may be liable to St. Martin for failure to engage in the interactive process will be informed by whether she has established her *prima facie* case. I have assumed that St. Martin was "disabled" within the meaning of the ADA and therefore, will focus on the second prong, *i.e.*, whether she was a qualified individual. As noted by the First Circuit, the criterion for determining whether an employee is a "qualified individual" is interrelated to the reasonable accommodation requirement: " '[b]eing qualified is determined in relation to the essential functions of the job, and reasonable accommodation by the employer does not require elimination of the essential function of the job.'" *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012)(citation to quoted case omitted). St. Martin's Complaint is significantly lacking

in detail; it is not even clear from her allegations what her job entailed prior to her accident. The documents which she affixed to the Complaint establish that she was hired by AZZ, a manufacturing company, in 2007 and that at the time of her termination, she was a detail drafter.[4] Such lack of detail may be deliberate on St. Martin's part, as it inhibits AZZ's ability to establish that she could perform the essential functions of her position.  In this case, however, as more fully discussed below, the medical evidence establishes that as of the date of her termination, St. Martin could not perform the essential functions of *any* job. For that reason, the specifics of St. Martin's job function are largely irrelevant and the lack of information concerning her job responsibilities will not prevent the Court from analyzing whether she has stated a plausible claim.

On August 2, 2013, a little more than three weeks prior to St. Martin's termination, her physician filled out a medical evaluation for Unum, AZZ's long term disability provider, in which he stated that: (1) St. Martin suffered from post concussive syndrome; (2) she could not perform cognitive tasks for any period of time without exacerbation of her symptoms; (3) she could not work on the computer or perform cognitive tasks for more than 1-2 hours every other day; (4) her current course of treatment required brain rest; and (5) as of August 13, 2013, she could return to work 1-2 hours per day every other day as a trial period. *Complaint*, at *Ex. 6*. Additionally, the doctor's office notes make clear that he did not think her neurologist had taken a significant enough history of her symptoms to reliably suggest that she return to work, and that he was pessimistic she would be able to even manage the 1-2 hours per day every other day without exacerbating her symptoms. *Id.*, at *Ex. 7*. He also opined that he agreed with the

---

[4] When considering a motion to dismiss for failure to state a claim, the court "must consider the complaint, documents annexed to it, and other materials fairly incorporated within it." *Rodi v. Southern New England School of L.*, 389 F.3d 5, 12 (1st Cir. 2004).

neurologist's assessment that it would take 6-12 months for her to recover completely—although he felt it would likely be closer to 12 months.

On August 9, 2013, AZZ essentially initiated the interactive process by sending St. Martin a letter telling her that her available leave had been exhausted as of that date and asking her to have her physician complete a "Healthcare Provider Inquiry" so that AZZ could better understand the limitations imposed by her impairment. On August 23, 2013, Dr. McSweeney faxed the completed form to AZZ in which he stated that St. Martin was "unable to sustain any cognitive or physical activity," because engaging in such activity causes "worsening of headaches, nausea, fatigue with mental effort." *Id.*, *Ex. 9,* at p. 1. In response to the inquiry as to what "essential job function(s) will the employee have trouble performing because of the limitations," he stated: "*all functions that require thinking/concentrating*. " *Id.* (emphasis added). The form also asked the doctor how St. Martin's limitation would interfere with her ability to perform her job functions. His response: "Self explanatory. If you cannot think correctly or sustain attention, *you cannot perform any job*." *Id., Ex. 9*, at p. 2 (emphasis added). As to possible accommodations that could enable St. Martin to successfully perform the essential elements of her job, her doctor suggested: "significantly limiting the hours worked per day until she recovers and proves she can perform," and that "limiting hrs would allow continued improvement or stress of her brain will cause set back." *Id.*[5]

Read in their entirety, the medical records make clear that St. Martin could possibly return to work on a significantly reduced schedule. At the same time, *even with this accommodation*, she could not perform the essential functions of her job, indeed, of *any* job, because she could not

---

[5] It should be noted that St. Martin bears the burden of establishing that the requested accommodation is reasonable on its face. *See Jones*, 696 F.3d at 90. Based on the allegations in her Complaint and her argument, St. Martin appears to be under the assumption that any accommodation suggested by her physician must be deemed reasonable. This is simply not the case and while the Court is mindful that we are at the pleading stage, St. Martin has failed to establish as a matter of law that her requested accommodation of working *significantly* reduced hours is reasonable on its face. Of course, had she pled facts which would establish that her request was reasonable, AZZ would bear the burden of establishing that her request created an undue hardship.

sustain any cognitive or physical activity.  Indeed, St. Martin's correspondence with the EEOC makes clear that for the ten months following her termination, her cognitive abilities were so impaired she could not file her administrative complaint in a timely manner.  Under these circumstances, even if AZZ failed to engage in the interactive process, it is not liable to St. Martin because she could not perform the essential elements of her job with or without reasonable accommodation. *Accord Jones*, 696 F.3d at 91 (plaintiff cannot sustain claim that employer failed to engage in interactive process because such duty does not arise unless at bare minimum, employee is able to perform essential functions of her job).

St. Martin suffered a horrific injury, which resulted in a lengthy recovery period during which her cognitive abilities where severely impaired.  Her employer granted her leave beyond that to which she was entitled under the FMLA.  When at the point she was unable to return to work, she was terminated.  Accepting St. Martin's allegations as true, AZZ's human resource department could have engaged in more one on one communication with her during the interactive process.  Nonetheless, the bottom line is that upon exhaustion of her leave, St. Martin could not return to work and perform the essential functions of her job, with or without, *reasonable* accommodation.  For that reason, she has failed to state a claim for violation of the ADA.

### Conclusion

The Motion of Defendant AZZ/CGIT, Inc. to Dismiss Plaintiff's Complaint (Docket no. 7), is ***granted***.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE